UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSAMA WILLIAMS,

                Plaintiff,                      Civil Action No. 17-11394
                                                Honorable Matthew F. Leitman
v.                                     Magistrate Judge David R. Grand


AK STEEL CORPORATION,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
AK STEEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT [38]**

Plaintiff Osama Williams ("Williams") brings this employment discrimination action against Defendant AK Steel Corporation ("AK Steel") pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12112 to 12117. (Doc. #1). Williams alleges that AK Steel failed to accommodate her disability, and committed other discriminatory acts against her, on February 26, 2016, May 26, 2016, and in "August, 2016," by not offering her certain positions she claims were available and that she was capable of performing. (*Id.* at 5). In her complaint, she writes, "I passed required FCE (function[al] capacity examination, results enclosed). Able to work even with my disability [] within my place of employment." *Id.* Her complaint also contains a copy of her Right to Sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"), which provides a detailed overview of the events underlying this action, as well as her functional capacity examination completed on April 26, 2016. (*Id.* at 9-23). Although Williams filed her complaint *pro se* on May 1, 2017, she has been represented by counsel since April 28, 2018. (Docs. #1, #28).

1

On September 7, 2018, AK Steel filed a motion for summary judgment.  (Doc. #38).
Williams filed a response on October 5, 2018, and AK Steel then filed a reply.  (Docs. #42, #43).
The undersigned held a hearing on this matter on January 14, 2019.[1]

While Williams took multiple medical leaves during her employment tenure with AK Steel
and its predecessor, her testimony reflects that she is a proud and conscientious employee.  (Doc.
#38-2 at *e.g.*, 54-55, 72, 92, 96, 100-101).  Indeed, one of her main claims in this case is based on
her strong desire to return to a busy warehouse position at AK Steel.  Unfortunately, though,
Williams' prior surgeries and serious medical issues resulted in her doctor explicitly and repeatedly
precluding her from lifting more than 15 pounds, and it is undisputed that the warehouse position
involves lifting packages weighing at least that amount.  Thus, the warehouse position is simply
not suitable work for her.  As to other positions Williams claims AK Steel could have placed her
in during the time in question (AK Steel brought her back to work in July 2017), she failed to raise
a material question of fact that those positions were actually available and that she was qualified
for them.  Accordingly, AK Steel's motion for summary judgment (**Doc. #38**) should be
**GRANTED** and Williams' claims should be **DISMISSED WITH PREJUDICE.**

I.      **BACKGROUND**

Williams first began working at Dearborn Works (which was then owned by Severstal
North America, Inc.) in June 2004, and became an AK Steel employee on September 16, 2014,
when AK Steel purchased the Dearborn Works facility.  (Doc. #38-2 at 6, 172).  Even after two
medical leaves, and throughout the course of this case, Williams continues to be employed at AK

---

[1] Pretrial matters have been referred to the undersigned for resolution or report and
recommendation, pursuant to 28 U.S.C. §636 (b)(1).  (Doc. #7).

Steel.  While Williams' positions have changed during her years of employment at Dearborn Works and AK Steel, her classification has remained labor grade 100, Utility Person.  (*Id.* at 6-7).

In December 2009, Williams suffered injuries to her back, neck, and arm, allegedly as a result of an assault by a police officer.  (Doc. #38-2 at 5, 26).  Due to her injuries, Williams took a medical leave that lasted almost three years.  (*Id.* at 173).  In October 2012, she returned to working in the warehouse as a Utility Person/Truck Driver.  (*Id.* at 18).  While Williams contests some aspects of how the warehouse job was actually performed, it is undisputed that during the relevant time, a "Physical Demands Assessment" for the job required the ability to lift up to 53 pounds, and (among other things) "occasional" twisting, stooping, climbing, reaching, crouching, pushing and pulling.  (*Id.* at 175-78).  Regardless of the Physical Demands Assessment, it is undisputed that at least some packages coming into the warehouse weighed more than 15 pounds. (*Id.* at 18;  #38-3 at 3).  But, in October 2014, Williams again took a medical leave, which she claims was due to mental health conditions, rather than physical conditions.  (Doc. #38-2 at 18). This medical leave lasted until at least July 2017, though Williams asserts that she attempted to return to work on multiple occasions, beginning on February 26, 2016.  (*Id.* at 9-10).  (*See* Docs. #38 at 9; #42 at 4).

The interim records help explain, at least in part, why Williams did not return to work earlier.  On January 26, 2016, Williams' physician, Dr. Tejpaul Pannu, restricted her from working until February 29, 2016.  (Doc. #38-2 at 170).  Importantly, Dr. Pannu also restricted Williams from lifting more than 15 pounds, and from repetitively squatting, bending, or twisting, and wrote, "*with options of frequent breaks."  (*Id.*).  Shortly before Williams anticipated returning to work, on February 26, 2016, she met with a union representative and a Labor Relations Representative to discuss her restrictions, work options, and potential accommodations.  It is undisputed that AK

Steel did not permit Williams to return to working in the warehouse following this meeting.  (Doc. #38 at 10).  Nor was she offered an alternate position within AK Steel at that time.  (*Id.*).

Dr. Pannu continued Williams' same restrictions through March 2016.  (Doc. #38-2 at 171).  But, on April 29, 2016, Williams completed a "Physical Work Performance Evaluation" ("the Work Performance Evaluation") at the Rehabilitation Institute of Michigan.  (*Id.* at 157-66; #1 at 14-23).  This Work Performance Evaluation included a breakdown of Williams' functional abilities in certain areas, and ultimately concluded that she was capable of performing "medium" level work, and specifically, that she could occasionally lift 25 pounds floor to waist and 15 pounds waist to eye level.  (*Id.*).  The Work Performance Evaluation also notes that these lifting capabilities do not "match" her employer's job requirements, but that many of her other capabilities did "match."  (*Id.*).

The next month, in May 2016, Dr. Pannu cleared Williams to return to work.  (Doc. #38-2 at 189).  However, in contrast to the findings from the Work Performance Evaluation, Dr. Pannu still restricted Williams from, among other functions, lifting more than 15 pounds.  (*Id.*).[2]  Williams well understood why Dr. Pannu was "adamant" about maintaining her stringent lifting restrictions:

> So [Dr. Pannu] told me [] he is not going to lift [the restrictions], because my safety, my health is in jeopardy . . . that's why he was real adamant on it.  I have no more room for surgery in my neck.  I have a plate, six screws, and I'm fusioned C-3 to C-7.  There's nothing left to fuse.  He cannot go back in there.  He didn't want to go back the second time.

(Doc. #38-2 at 52).

---

[2] There is no evidence in the record as to whether Dr. Pannu was aware of the Work Performance Evaluation results when he issued his subsequent restrictions, though AK Steel contends it sent him a copy of the Work Performance Evaluation.  (Doc. #38-2 at 51).  After first saying she was unsure, Williams then testified, "So I think [AK Steel] did send it [to Dr. Pannu]."  (Doc. #38-2 at 51).  The issue is immaterial, though, because either way, the record is clear that Dr. Pannu – Williams' own doctor – never removed the 15-pound lifting restriction.

In May and August 2016, Williams again met with AK Steel representatives to discuss returning to work.  When AK Steel did not agree to return Williams to work, she filed a Charge of Discrimination with the EEOC on September 26, 2016.  On February 1, 2017, the EEOC issued Williams a Notice of Right to Sue.  Williams then filed her instant complaint under the ADA on May 1, 2017, alleging, among other discriminatory acts, that Defendant AK Steel Corporation failed to accommodate her disability.  (Doc. #1).

Thereafter, in July 2017, AK Steel offered Williams a new clerical position in the Transportation Department.  (Doc. #38-2 at 61).  From July 2017 to March 2018, Williams worked in this capacity.  (*Id.* at 101).  In March 2018, she took another medical leave relating to a foot surgery.  (*Id.*).  She expected to return from the most recent medical leave in July 2018, and as of at least January 14, 2019, has been working in this same position.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);  *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat

the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotations omitted).  To survive summary judgment, a non-moving party also "cannot rely on conjecture or conclusory accusations."  *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## III.   ANALYSIS

In her complaint, Williams alleges that AK Steel failed to accommodate her disability, and committed other discriminatory acts against her.  (Doc. #1 at 5).  Williams' complaint fails to meaningfully explain the factual basis underlying these allegations.[3]  However, her deposition, and the documents attached to her complaint—the EEOC Right to Sue letter, and her physical evaluation from April 2016—provide some indication as to the basis of her suit.  Essentially, Williams alleges that AK Steel discriminated against her: (1) by not permitting her to return to working in the warehouse, with or without reasonable accommodations, in early 2016; and (2) by not permitting her to work in another position for which she was qualified, such as a clerk or liaison.  (Doc. #1).  Notably, Williams' complaint contains no allegations regarding any discrimination in her current position, because she began her current position after she filed her complaint.  Nonetheless, both parties advance arguments relating to Williams' claims about her current position, which the Court will address below.

---

[3] Although Williams filed her complaint *pro se*, since April 2018, she has been represented by counsel.  (*See* Docs. #1, #28).  Therefore, although the original complaint may be entitled to liberal construction, as it was drafted and filed by a *pro se* party, Williams is now represented by counsel, and is no longer entitled to such deference.  The Court notes that no amended complaint was filed after Williams became represented.  Further, "[a]lthough a pro se litigant's complaint is entitled to liberal construction, a court may not abrogate the basic essentials of federal notice pleading, nor re-write a deficient complaint or otherwise serve as counsel for the plaintiff."  *Nails v. King*, No. 15-13218, 2015 WL 5590742, at *1 (E.D. Mich. Sept. 23, 2015).

For the reasons discussed below, Williams fails to raise genuine factual disputes as to whether AK Steel discriminated against her from 2016 to present, and AK Steel's motion for summary judgment should be granted.

### A.   Elements of Williams' ADA Claim

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability.  *See* 42 U.S.C. § 12112(a); *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 252 (6th Cir. 2000); *Gunter v. Bemis Co., Inc.*, 906 F.3d 484, 488 (6th Cir. 2018); *see also* 42 U.S.C. § 12112(a); *Kleiber v. Honda of Am. Mgf., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).  An individual is considered "disabled" under the ADA if she:

> (A) [has] a physical or mental impairment that substantially limits one or more of [her] major life activities ...;
>
> (B) [has] a record of such impairment; or
>
> (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).

Not only must the ADA plaintiff establish that she is "disabled," she must also establish that she is a "qualified individual with a disability," which the ADA defines as:

> [A]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual *holds or desires* ....

42 U.S.C. § 12111(8) (emphasis added).  Thus, in order for a qualified individual with a disability to establish a *prima facie* case of discrimination under the ADA, she must show:

> (1) [she] is a disabled person within the meaning of the Act;
>
> (2) [she] is qualified to perform the essential functions of [the job she holds or desires] with or without reasonable accommodation; and
>
> (3) [she] suffered an adverse employment decision because of [her] disability.

7

*Burns*, 222 F.3d at 253 (internal citations omitted).   The Sixth Circuit defines an adverse employment action as "an action 'that results in a materially adverse change in the terms and conditions of plaintiff's employment' such as 'a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities.'"   *Love v. Elec. Power Bd. of Chattanooga, EPB*, 392 F. App'x 405, 408 (6th Cir. 2010) (citation omitted).   "A 'mere inconvenience or an alteration of job responsibilities' is not enough to constitute an adverse employment action."   *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citations omitted); *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) ("A 'de minimis employment' action is 'not materially adverse and, thus, not actionable.'   In other words, a 'bruised ego' caused by trivial employment actions is not sufficient.") (citations omitted).

Where the ADA plaintiff claims her employer failed to accommodate her disability, a somewhat different burden-shifting framework applies.   As the Sixth Circuit explained in *Kleiber*:

> Kleiber bases his discrimination claim upon Honda's failure to accommodate his disability.   Honda acknowledges that it did not accommodate Kleiber's disability but argues that no reasonable accommodation was possible because Kleiber was not qualified for any position.   As noted above, failing to make a reasonable accommodation falls within the ADA's definition of 'discrimination.'   Accordingly, claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination.   [] This conclusion is consistent with the definition of direct evidence, for if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination.   [] It is further consistent with our analysis in *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1182–84 (6th Cir. 1996), in which we noted that claims for failure-to-accommodate fall within the category of cases in which the employer relies on the employee's disability in its decision-making, and consequently are suitable for analysis under the direct-evidence framework.   *See also Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 724–30 (6th Cir. 2000) (applying direct-evidence standard to claim for failure to accommodate).
>
> When an ADA plaintiff premises his claim upon direct evidence, we jettison the familiar *McDonnell Douglas* burden-shifting framework applicable in

indirect-evidence cases (also called "circumstantial-evidence cases"), and we analyze the claim under the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled.  (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.
>
> *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir.), cert. denied, 543 U.S. 817, 125 S.Ct. 68, 160 L.Ed.2d 25 (2004).
>
> Honda does not contest that Kleiber is disabled.  Instead, the parties' dispute centers on whether Honda could reasonably accommodate Kleiber's disability by transferring him to a different job—part (2)(c) of the above framework. Accordingly, to survive summary judgment, it is Kleiber's burden to submit evidence sufficient to create a genuine issue of material fact regarding whether he is qualified for a position with a proposed reasonable accommodation.

*Kleiber*, 485 F.3d at 868-69.

Employers can also accommodate an employee's disability by transferring her to a position different than the one she previously held.  In *Burns*, the Sixth Circuit explained, "an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified.  We do not, however, hold that the employer must reassign the disabled employee to a position for which he is not otherwise qualified, or that the employer must waive legitimate, non-discriminatory employment policies or displace other employees' rights to be considered in order to accommodate the disabled individual. . . .  an employer need only reassign a disabled employee to a vacant position. . . . Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a

collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." *Burns*, 222 F.3d at 257.  *See also, Johnson v. Ford Motor Co.*, No. 17-cv-11412, 2019 WL 78893, at *6 (E.D. Mich. Jan. 2, 2019).  The plaintiff bears the burden of "demonstrat[ing] that there is a vacant, accommodating position." *Gazvoda v. Sec'y of Homeland Sec.*, No. 15-CV-14099, 2015 WL 7450397, at *4 (E.D. Mich. Nov. 24, 2015).  *See also, Arndt v. Ford Motor Co.*, 247 F. Supp. 3d 832, 856 (E.D. Mich.), *aff'd*, 716 F. App'x 519 (6th Cir. 2017) ("'to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position.'  And 'an employer need only reassign the employee to a vacant position.'") (internal citations omitted).

Like the employer in *Kleiber*, here, AK Steel does not appear to dispute that Williams had a disability or suffered an adverse employment decision, and the Court will assume, for the purposes of this particular issue, that Williams satisfies the first and third prongs of her *prima facie* case of discrimination under the ADA.[4]  The principal disputes here center around (1) the "essential functions" of the warehouse position Williams sought, and whether she was qualified to perform those functions, and (2) whether other positions existed at AK Steel that Williams was qualified to perform, in each case with or without a proposed reasonable accommodation.  The Court will address those issues, in turn.

### 1.  Warehouse Position

It is undisputed that Williams worked in the warehouse before she went on medical leave.[5]  The primary question is whether, after Williams returned from medical leave, considering her

---

[4] The record suggests that Williams' conditions "substantially limit" at least one major life activity, including lifting, reaching, bending, and working, pursuant to 29 C.F.R. § 1630.2(i).

[5] Williams claims she worked in the warehouse as recently as 2016, whereas AK Steel claims she only worked in the warehouse until 2014.  (*Cf.* Docs. #38 at 9; #42 at 3).  Williams' claim is

lifting and other restrictions, she was still qualified to work in the warehouse.  The salient restrictions imposed by Williams' own doctor, most recently articulated in May 2016 and continuing through the present, are undisputed: she cannot lift more than 15 pounds; she cannot repetitively squat, bend, or twist, and she should have the option of frequent breaks.  (Doc. #38-2 at 189).

AK Steel's main argument is fairly straightforward: the lifting restrictions imposed by Williams' own doctor conflict not only with the stated "Physical Demands Assessment" for the warehouse position, which indicates that workers must have the ability to lift up to 53 pounds, but also with Williams' own testimony that packages in the warehouse weighed more than 15 pounds. (*compare id.* with Doc. #38-2 at 18, 175-78).  In response, Williams argues (1) there are material factual disputes about the warehouse position's essential functions – most importantly, whether the ability to lift packages weighing over 15 pounds, by oneself, is an "essential function" of the position, and (2) whether using a lifting device and/or coworkers to help her lift packages would be a reasonable accommodation, such that Williams was still qualified to perform the job.  Both of Williams' arguments lack merit.

*a.  The Warehouse Position's "Essential Functions"*

First, to show she was qualified for the warehouse position, Williams must show that she could perform the position's "essential functions," with or without reasonable accommodation.  42

---

unsupported by the record. While she cites page 17 of her deposition for this proposition, in reality, there she was testifying about the date of the interactive process meeting.  (Doc. #42-1 at 17). Instead, earlier in her deposition, she testified that she was off work for medical reasons the "entire time" between October 2014 and the date she filed her complaint — May 1, 2017.  (Doc. #42-1 at 9) ("[AK STEEL] So at the time that you filed the lawsuit you were off work [] for medical reasons []…And you had been off work going back to October 2014, that entire time; right? [WILLIAMS] Yes.").  Regardless, neither date changes the undisputed fact that Williams had previously worked in the warehouse before taking medical leave.

U.S.C. §12111(8); *see also Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 985 (6th Cir. 2011).   EEOC regulations define "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires."   29 C.F.R. § 1630.2(n)(1). "A job function may be considered essential because: (1) the position exists to perform that function; (2) there are a limited number of employees available among whom the performance of that job function can be distributed; or (3) the function is highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function*." Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 445–46 (6th Cir. 2017) (citing *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013)).

ADA regulations provide the following non-exclusive list of factors to consider when determining whether a job function is essential: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the function to be performed; (v) the terms of the collective bargaining agreement; (vi) work experience of past employees in the job; and/or (vii) the current work experience of the employees in similar jobs.   29 C.F.R. 1630.2(n)(3); *see also Hoskins,* 227 F.3d at 726.   As noted above, AK Steel bears the burden of proving that any challenged job criterion is an essential function.   *Kleiber*, 485 F. 3d at 689.

Significantly, there is no factual dispute that the warehouse position requires at least *some* lifting and receiving packages that vary in size and weight, with at least some packages weighing over 15 pounds.   (*See* Doc. #38-2 at 18).   Relying on the affidavit of Said Haymour ("Haymour"), the Warehouse Department Manager, and the Physical Demands Assessment from 2011, AK Steel asserts that being able to lift at least 50 pounds, alone, is an essential function of the warehouse position.   Haymour also asserts that, "Utility Persons in the Warehouse Department rotate through

a variety of different jobs, with tasks ranging from sedentary to strenuous.  As a result, all such Utility Persons must be able to lift packages which can weigh anywhere from a few ounces up to 50 pounds.  The majority of these packages weigh more than 15 pounds." (Doc. #38-3 at 3).  He also asserted that working in the Warehouse Department is "a busy job," and "Utility Persons lift packages, bend, crouch down, reach overhead, climb into a large stake truck and a forklift, and perform other body mechanics on a repetitive basis throughout their shift." (*Id.* at 3-4).  Finally, he avers that he has "witnessed employees assisting each other lifting packages only on a few occasions," "the work of Utility Persons [] is time sensitive," and "[d]ue to the busy nature of the Warehouse Department, employees must be able to lift packages weighing up to 50 pounds on their own." (*Id.* at 4).

Williams' only real bone of contention with Haymour's characterization of the warehouse position work is her argument that lifting objects – *regardless of their weight* – is not an "essential function" because workers can always use an assistive device or get help from co-workers.  (Doc. #42 at 7-8, 10-11).[6]  This argument lacks merit.  It is true that Williams testified that when it came to *heavier packages*, warehouse employees would use assistive devices or help one another.  For instance, she testified: "[w]hen we have *certain products* that we have to move that's *heavy* . . . we have equipment that helps us to get things down"; "we wouldn't be pushing and pulling [] *86 pounds*.  We would be using a lifting device to do something.  We're not going in there doing weightlifting tactics . . . We don't pick up *heavy stuff*. . . . We don't pick up *53 pounds by ourself* [sic].  We work together"; "If we have to get *something heavy* off the floor, we have a device in there that we can actually put it up underneath it and raise it up"; and "If it's a *heavy product* or

---

[6] Williams admits that working in the warehouse is busy, and does not dispute that at least some packages weigh more than 15 pounds.  (Doc. #38-2 at 45).

whatever it is, if the hi-lo can't pick it up, we go and get the straps."  (Doc. #38-2 at 20, 24-25, 43, 53) (emphasis added).  However, Williams admitted that the warehouse received and handled packages over 15 pounds (*id.* at 18), and she presented no evidence – in her own deposition, or otherwise – that assistance from coworkers or lift devices are used (or would even be feasible) for lifting such smaller items.  Williams cannot create a material question of fact by asking the Court to assume that her vague statements about receiving assistance lifting heavy packages in the warehouse would also apply to all packages weighing more than 15 pounds.  *See Dow v. Rheem Mfg. Co.*, No. 09-13697-BC, 2011 WL 4484001, at \*15 (E.D. Mich. Sept. 26, 2011), *aff'd*, 527 F. App'x 434 (6th Cir. 2013) ("Where actual evidence of a plaintiff's theory is 'speculative,' summary judgment should be entered in favor of the defendant.").

The case law on which Williams relies does not help her.  In *Mosby-Meachem v. Memphis Light, Gas & Water Division,* 883 F.3d 595 (6th Cir. 2018), the issue was whether in-person attendance was an essential function of the plaintiff's job as an "in-house attorney" for a Memphis utility.  The utility had denied the attorney's request to work from home for ten weeks while she was on a pregnancy-related bedrest.  After a jury trial that resulted in a favorable verdict for the attorney, the utility appealed, arguing that it was entitled to judgment as a matter of law because the attorney's requested accommodation to telework was "per se unreasonable," as it removed some purportedly "essential" functions of her job that required in person attendance, such as attending trial and depositions.  *Id.* at 603.  The Sixth Circuit rejected that argument, however, finding that the plaintiff had produced sufficient evidence, "including testimony from coworkers," for a reasonable jury to conclude that in-person attendance was not an essential function of her job.  *Id.*  Specifically, the Sixth Circuit noted that (1) "several MLG&W employees as well as outside counsel who worked with Mosby-Meachem testified that they felt she could perform all

14

essential functions during the 10-week period working from home"; (2) Mosby-Meachem presented "uncontested testimony that [she] had never 'tr[ied] cases in court' or 't[aken] depositions of witnesses'—two functions listed in the [job description] —during the entire eight years she had worked for MLG&W"; and (3) "the job description on which MLG&W relied was based on a 20-year-old questionnaire that did not reflect changes in the job that have resulted from technological advancements since that time." *Id.* at 604. Williams' case is distinguishable because, as discussed above, she failed to proffer evidence to raise a material question of fact that one of the warehouse position's essential functions is the ability to lift at least 15 pounds.[7]

### b. *Reasonable Accommodation*

The next, and somewhat related, question, is whether AK Steel denied Williams a reasonable accommodation with respect to the warehouse position's lifting requirement. 42 U.S.C. § 12111(9) provides that "reasonable accommodation" may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Although "[t]he reasonableness of a requested accommodation is generally a question of fact," *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1025 (6th Cir. 2013) (internal citations omitted), Williams bears the burden of proving a reasonable accommodation is possible, and that

---

[7] Although the parties dispute whether the warehouse position would allow the option of frequent breaks, as required by Dr. Pannu (*see* Doc. #38-2 at 189), this issue is moot, as the Court finds Williams unable to perform the position anyway, due to her lifting restriction.

she is qualified for the position with the reasonable accommodation.  *Hoskins*, 227 F.3d at 728

("When the employee seeks a reasonable accommodation, she must establish that a 'reasonable'

accommodation is possible, and bears a traditional burden of proof that she is qualified for the

position with such reasonable accommodation.  If the plaintiff establishes that a reasonable

accommodation is possible, the employer bears the burden of proving that such reasonable

accommodation would impose an undue hardship."); *see also White v. Interstate Distrib. Co.*, 438

F. App'x 415, 418–19 (6th Cir. 2011).  To overcome summary judgment, she must present

sufficient evidence to raise a material question of fact as to those issues.

As reasonable accommodations for the warehouse position, Williams proposes that other

employees or lifting devices could assist her lifting boxes heavier than 15 pounds.  Relying on her

own deposition testimony about her experience working in the warehouse, Williams claims that

assisting one another with heavier packages and using assistive devices is the norm in the

warehouse, so her requested accommodations are feasible and reasonable.  (Doc. #38-2 at 25).  In

further support of this, Williams asserts that when she worked in the warehouse previously, she

had a lifting restriction of 30-35 pounds and was still able to do the job.  (*Id.* at 26).  According to

Williams, since she has already performed the job with reasonable accommodations, it is

reasonable to assume she could continue doing so, even despite her updated and far more severe

15-pound lifting restriction.

In response, AK Steel disagrees that obtaining assistance from other employees is a

reasonable accommodation.  Because Williams, per her own doctor, would require assistance

whenever she needed to lift anything over 15 pounds,[8] AK Steel argues, "Williams essentially

---

[8] AK Steel relies on Haymour's affidavit to assert that most packages weigh more than 15 pounds.
According to AK Steel, "It would not be feasible for Williams to have her co-workers assist her in

asked to have someone who could perform the essential functions of the position available to assist at her whim."  (Doc. #38 at 20).  According to AK Steel, "[t]he ADA requires no such thing." (Doc. #38 at 20 (citing *Johnson*, 443 Fed. Appx. 974)).  The Court agrees.

In *Hoskins*, the Sixth Circuit affirmed the district court's granting summary judgment in favor of the defendant employer.  Similar to Williams here, the plaintiff employee in *Hoskins* argued that she could perform the essential function of the job (in that case, restraining inmates) with the assistance of other coworkers, citing the general policy that deputies call for assistance in those situations.  The district court and the Sixth Circuit rejected the plaintiff's argument because the "ADA does not require employers to accommodate individuals by shifting an essential job function onto others."  *Hoskins*, 227 F. 3d at 729 (citing *Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632 (6th Cir.1999) ("The only possible accommodation [the plaintiff] identifies is allowing co-workers to perform as much as 20% of the essential automotive mechanic duties for Bratten when he needs such assistance.... Continuing the practice of 'assisting' Bratten in tasks on an *ad hoc* basis may be sound labor relations policy for defendants, as we can imagine that such circumstances could promote employee loyalty and teamwork.  However, employers are not required to do so under the ADA.")); *see also* 29 C.F.R. pt. 1630, App. § 1630(o*)* ("An employer or other covered entity is not required to reallocate essential functions.").

Courts have applied this principle to cases like this one that involve lifting restrictions.  For example, in *Snowden v. Trustees of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015), the Second Circuit upheld the district court's decision that the plaintiff "made no specific showing that a reasonable accommodation was available to her employer, given her limited abilities to bend,

---

lifting nearly every package that comes through the Warehouse."  (Doc. #38 at 19).  Williams does not dispute that at least some packages coming through the warehouse weigh more than 15 pounds.

reach, and lift," and that to the extent the plaintiff sought "help" from other employees in executing these actions and performing her job functions, "such an accommodation constitutes an elimination of an essential function of [her] job and ... is unreasonable under the law."

*Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 930 (S.D. Tex. 2002), is even more analogous. There, the plaintiff worked as a shipping clerk for CTS Corp., which required him to lift more than 40 pounds, and up to 90 pounds.  After his doctor limited him to no lifting more than 40 pounds, he was fired.  He then filed an action under a Texas law that mirrored the ADA, alleging that because many packages would weigh less than 40 pounds, "the ability to lift heavier packages was not an essential function of a Shipping Clerk." *Id.* at 927.  Analyzing the case under ADA case law, the court rejected that argument, explaining, "[i]t does not follow, however, that because the weight of the average carton was within his 40–pound weight restriction, the ability to lift heavier packages is not an essential function of a Shipping Clerk." *Id.*  The court also rejected the plaintiff's contention that he could rely on other employees to help him lift the heavier packages:

> [The plaintiff] stipulates that if he had received assistance in lifting cartons that weighed over 40 pounds he could have continued to work.  Nonetheless, the ADA does not require employers to modify the duties of other employees in order to provide a reasonable accommodation.  An employer is not required to eliminate or reallocate essential functions of a position in order to provide accommodation. . . .
>
> * * *
>
> It is not reasonable to require an employer to have two people doing one person's job in the name of accommodation.  Assistance is one thing, but performing a significant portion of the essential functions of another person's job is another thing altogether.

*Herrera*, 183 F. Supp. 2d at 930 (internal citations omitted).

As in the above cases, Williams here suggests that although her own doctor found she could not lift packages weighing more than 15 pounds, AK Steel could accommodate that disability by

allowing her to obtain the assistance of other employees or use a lifting device every time a package exceeded that weight threshold.  But that argument fails for two reasons.  First, as noted above, Williams presented no evidence that it would be feasible for her to obtain such assistance with all packages weighing more than 15 pounds.  And, second, under the above case law, it is simply not reasonable – especially in a warehouse position where packages weigh more than 15 pounds – to require AK Steel to make an additional employee available to assist Williams at essentially all times.  *See also, Johnson*, 443 F. App'x at 986 ("having another person instantly available to step in and enforce order at all times would require the employment of two full-time positions to do the job of a single employee [and] is clearly an undue burden on the [employer] [] not a reasonable accommodation.").

The Court also rejects the argument Williams made at the hearing, that her doctor's restrictions were imprecise, and that she is actually less restricted than he suggests.  "[A] plaintiff's uncorroborated belief in his physical prowess is not enough to counter affirmative evidence to the contrary."  *Johnson,* 443 Fed. Appx. at 986 (citing *Boback v. Gen. Mot. Corp.,* 107 F.3d 870, 1997 WL 3613 (6th Cir.1997) (citing *White v. York Int'l Corp.,* 45 F.3d 357, 362–63 (10th Cir.1995)).  Williams' subjective belief in her physical capacity, which calls into question the accuracy of her own doctor's explicit restriction, is therefore immaterial.  *See id.* ("Whether Johnson feels that her limitations are less than [the doctor suggested] is immaterial.");  *see also Manigan v. Southwest Ohio Regional Transit Auth.,* 385 Fed.Appx. 472, 478 (6th Cir.2010) (rejecting arguments about plaintiff's ability that contradict the doctor's explicit restriction).

Williams also argues that "[t]he fact that [she] recently and successfully performed the duties of the position should be dispositive evidence that [she] can in fact perform the essential job functions in the warehouse position."  (Doc. #42 at 10).  During her deposition, Williams testified

19

that it had "been a while since [she was] able to pick up 53 pounds" – the warehouse position's lifting requirements per the "Physical Demands Assessment" – because before her current 15-pound weight restriction, she was restricted to lifting "30 or 35 pounds." (Doc. #38-2 at 26, 175-78). Even if the Court credits this testimony – which is unsupported by any corroborating evidence such as a doctor's note or functional capacity assessment – it does not raise a material question of fact that Williams could handle the warehouse job's lifting requirements given her new, far more severe restrictions of not lifting more than 15 pounds. Significantly, Williams also admitted during her deposition that the warehouse position has changed since she worked there. (*Id.* at 58).[9]

Finally, the recent Sixth Circuit case of *Gunter v. Bemis Co., Inc.*, 906 F.3d 484, 489 (6th Cir. 2018), not cited by the parties, is somewhat analogous to Williams' case and merits discussion. Gunter injured his shoulder while working as a press assistant for the defendant employer. Gunter ultimately had surgery on his shoulder, and thereafter a doctor limited him to (among other restrictions) no working overhead with his injured arm, and to lifting only up to 40 pounds occasionally and 20 pounds frequently (floor to waist). Based on the written job description for the press assistant position, which required the ability to perform "medium physical demands" and lift up to 45 pounds, *id.* at 487-89, the employer determined that Gunter could not perform the job's necessary lifting requirements, and terminated him.

After a jury found in Gunter's favor and awarded him a substantial sum of money (which the district court reduced), the parties cross-appealed. The Sixth Circuit upheld the jury's liability

---

[9] Relatedly, Williams fails to show whether her previous job was the same as the warehouse position she sought. For example, in response to a question as to whether she was a utility person in the warehouse previously, Williams responded, "Yes. Truck driver." (Doc. #38-2 at 18). In her response to AK Steel's motion, she writes that she was a "car placer." (Doc. #42 at 3). Because Williams provides no further explanation or evidence on this issue, she has not raised a material question of fact that this position was the same as the position she sought several years later.

finding, concluding that "[o]n this record," whether Gunter could "do the job" was "the jury's call . . ." *Id.* at 488.  But the record in Williams' case is vastly different than the one in *Gunter*.  First, in *Gunter*, the court found that Gunter had presented affirmative evidence that he "could lift 40 pounds from the floor to his waist up to one-third of the time," that the employer actually "encourages employees not to lift anything over 40 pounds by themselves," and that employees were permitted to use "lifting equipment . . . to lift many objects, even if an object weighs as little as 20 pounds." *Id.* at 489.  Gunter also presented evidence that "employees can ask their coworkers to help lift the heavier gears and often do."  *Id.*  In other words, the Sixth Circuit appeared to find (1) that Gunter was not required to lift more than 40 pounds by himself, and thus the 45-pound weight requirement in the employer's "job description" was illusory and did not mean he could not perform the job, and (2) that lifting equipment existed that he could use to lift lighter objects, such that Gunter's limitation of not lifting more than 20 pounds on a "frequent" basis could be accommodated, as well.

The instant record is distinguishable.  As explained above, here, there is no dispute that Williams was restricted by her own doctor from lifting more than 15 pounds, and she presented no evidence that it would be feasible for her to have someone help her, or for her to use an assistive device, every time she needed to lift any package weighing more than 15 pounds.  Moreover, in both *Gunter* and *Mosby-Meachem,* the Sixth Circuit noted the significance of the plaintiffs offering evidence besides their own testimony to support their position.  *See Gunter,* 906 F. 3d at 489; *Mosby-Meachem,* 883 F.3d at 603.  In fact, in *Gunter*, the Sixth Circuit specifically used this fact to distinguish the case from *Johnson*, 443 F. App'x 974, and *Manigan*, 385 F. App'x 472, two cases in which the court granted summary judgment in favor of the employer.  *See Gunter*, 906 F.3d 489 ("That helps to explain why *Johnson []* and *Manigan []* do not help [the defendant].  In those

unpublished cases, the employees offered only their own testimony to rebut the medical restrictions.  They did not show how the company and its other employees treated the necessary job requirements.").

In sum, the warehouse position in issue required employees to lift more weight than what Williams' own doctor said she could safely lift (Doc. #38-2 at 189), and Williams failed to meet her burden of establishing that any proposed accommodation existed or would be feasible. Therefore, Williams failed to raise a material question of fact as to whether she was qualified to perform the warehouse position's essential functions, with or without reasonable accommodation, and summary judgment in AK Steel's favor is proper.  *Hoskins*, 227 F.3d at 728.

Adopting Williams' argument would turn the ADA into a double-edged sword and put AK Steel in the untenable position of having to employ a person to perform a level of work that it knew her doctor had specifically found exceeded her capabilities.  In Williams' case, based on her own testimony, that risk seems particularly acute.  (Doc. #38-2 at 52) ("So [Dr. Pannu] told me [] he is not going to lift [the restrictions], because my safety, my health is in jeopardy . . . that's why he was real adamant on it.  I have no more room for surgery in my neck.  I have a plate, six screws, and I'm fusioned C-3 to C-7.  There's nothing left to fuse.  He cannot go back in there.  He didn't want to go back the second time.").  In short, because "[t]he ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden," *Wells v. Chrysler Grp. LLC*, No. 3:08CV2264, 2013 WL 2631371 (N.D. Ohio June 11, 2013) (quoting *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir.2003)), AK Steel is entitled to summary judgment on this issue.

2. *Other Positions (Clerk, Wastewater Position, Liaison Position)*

Williams contends that even if AK Steel was not obligated to offer her a position in its warehouse, it failed to accommodate her disability by not placing her into another position within the company for which she was qualified. Specifically, Williams alleges that AK Steel failed to transfer her to vacant clerk positions, a wastewater position, or a liaison position. As noted above, for Williams "to overcome summary judgment, [she] must identify the specific job [s]he seeks and demonstrate that [s]he is qualified for that position." *Arndt*, 247 F. Supp. 3d at 856. Williams fails to meet this standard.

Although Williams identifies February 26, 2016, May 25, 2016, and August 2016, as dates when AK Steel representatives unlawfully refused to place her in these positions, she failed to provide any evidence as to which specific positions, if any, were in existence, and vacant, at the time she sought transfer. Indeed, Williams admits as much when she argues, "[AK Steel] attempts to put the investigative function of whether or not there was a job opening on [her]. Defendant seems to claim that because Plaintiff could not point to a specific clerical position at the time of her deposition, that means that she did not ask for a reasonable accommodation. This is unsupported by logic and law. Defendant would be the only party with the ability to figure out which positions were, in fact, open at the time." (Doc. #42 at 11). The premise of Williams' argument is simply incorrect; the law is clear that as the plaintiff in this ADA action, Williams bears the burden of "demonstrat[ing] that there is a vacant, accommodating position." *Gazvoda*, No. 15-CV-14099, 2015 WL 7450397, at *4. *See also, Arndt*, 247 F. Supp. 3d at 856 ("'to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position.'") (internal citations omitted).

23

Williams' testimony confirms her failure to raise a material question of fact in opposition to AK Steel's summary judgment motion.  Most of her testimony was speculative and failed to even identify any specific position that was open, and for which she was qualified.  (*See* Doc. #38-2 at 63) ("I'm still under the impression [] that there was a job when I first came back in February…there was a clerk job available for me."); *id.* at 27 ("I felt that there was jobs there. [sic] I asked her to look, because I knew there were clerk jobs still left in some areas of the plant; that there was some outside contractors holding clerk positions.  We did have a discussion about it.  And this was [] ongoing.").  Evidence which is merely speculative cannot raise a material question of fact.  *See Dow*, No. 09-13697-BC, 2011 WL 4484001, at *15 (E.D. Mich. Sept. 26, 2011), *aff'd*, 527 F. App'x 434 (6th Cir. 2013) ("Where actual evidence of a plaintiff's theory is 'speculative,' summary judgment should be entered in favor of the defendant.").  *See also, Arndt*, 247 F. Supp. 3d at 858 (granting summary judgment on plaintiff's ADA claim after finding "[t]he Court, and therefore a reasonable juror, could only speculate whether a [particular type of job] would have been available for transfer at [the employer], and whether Plaintiff would have been able to perform the essential functions of that particular position with or without accommodation.").

Finally, while Williams did identify the "continuous caster" clerk position and wastewater positions with somewhat more specificity, she failed to raise a material question of fact that those jobs were available during the relevant time.  As to the clerk position, in response to questioning about whether Williams had any particular position in mind, she responded, "the clerk on the second floor.  Continuous caster…[] two young ladies [were] doing the clerk job and they were outside contractors."  (Doc. #38-2 at 39).  Similarly, as to the "wastewater" position that she believed she was qualified for, Williams admitted that it was a "non-bid" position that was already

24

held by a different union member, and that the "bump" procedure in AK Steel's collective bargaining agreement would not apply. (*Id.* at 28-33). Thus, AK Steel persuasively argues, without rebuttal by Williams, that because these were not "open on bid" "bargaining unit position[s]," "Williams had no contractual right to bump these employees . . ." (Docs. #38 at 23-24; #38-2 at 28-33). *See also Burns*, 222 F.3d at 257 (holding that the ADA does not require "that the employer must waive legitimate, non-discriminatory employment policies or displace other employees' rights to be considered in order to accommodate the disabled individual. . . . an employer need only reassign a disabled employee to a vacant position. . . . Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual."). In short, even as to these positions, Williams has not raised a material question of fact that they were "vacant" or that AK Steel violated her rights by not "bumping" the incumbent employees to accommodate her. (*Id.* at 33).

Because Williams failed to raise a material factual dispute as to whether any other specific positions existed or were vacant when she sought a transfer, and that she was qualified to perform such positions, AK Steel is entitled to summary judgment on this claim.

### 3. *Williams' Current Position – Railroad Clerk in the Transportation Department*

The Court now turns to Williams' complaints about her current position as a clerk in AK Steel's Transportation Department, in which she verifies and oversees items in transit. (Doc. #38-2 at 70-72). As a preliminary matter, Williams filed her complaint in this matter on May 1, 2017 – several months before she received that job opportunity in July 2017. (Doc. #1). She has not filed an amended complaint. Therefore, in her pleadings, she does not allege any discrimination relating to her current position. Nonetheless, during her July 23, 2018 deposition, Williams

testified that she was asserting failure to accommodate claims specifically related to her current position, and the parties addressed this issue in their summary judgment briefs. (Doc. #38-2 at 72-89). Currently, to accommodate Williams' alleged vision impairment and other disabilities, her supervisor drives her to the yard to complete her clerical duties. (*Id.* at 79). Williams argues that this accommodation is "embarrassing and degrading," "puts [her] in a bad light," and keeps her supervisor from performing other duties. (*Id.* at 72-80; Doc. #42 at 6). Thus, she now requests a stand up desk, new chair, the day shift, additional lighting near the yard in which she works, and a low profile vehicle. (Docs. #38-2 at 73, 87; Doc. #42 at 6).[10]

In moving for summary judgment on this issue, AK Steel first argues that Williams did not exhaust her administrative remedies with regard to this position, as her previous EEOC charge underlying the instant suit (dated September 26, 2016) was filed before she was even working in this position. AK Steel argues, therefore, she has failed to meet the necessary administrative prerequisite of filing a charge with the EEOC on these matters, and her current claims do not "reasonably grow out of the facts and claims she asserted" previously, citing *Jones v. Sumser Ret. Village,* 209 F.3d 851, 853 (6th Cir. 2000) and *Marcum v. Oscar Mayer Foods Corp.*, 46 Fed. Appx. 331, 333 (6th Cir. 2002). The Court need not decide AK Steel's exhaustion argument because Williams' claim is substantively lacking in merit, in any event.

Williams' assertions that her present accommodation is "embarrassing and degrading," "puts [her] in a bad light," and keeps her supervisor from performing other duties, do not rise to the level of adverse employment actions required to state a claim under the ADA. As the Sixth Circuit has explained, "[a] 'mere inconvenience or an alteration of job responsibilities' is not

---

[10] The Court notes that Williams testified that she never actually asked AK Steel to provide some of these accommodations. (Doc. #38-2 at 88-90).

enough to constitute an adverse employment action." *Deleon*, 739 F.3d at 918 (6th Cir. 2014) (citations omitted). And, "a 'bruised ego' caused by trivial employment actions is not sufficient." *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006). *See also*, *Love*, 392 F. App'x at 408. Thus, her claim fails, on its face.

Williams also failed to proffer evidence sufficient to raise a material question of fact that the new accommodations are legally required as a result of a disability. For instance, she failed to produce any recommendations or restrictions from her doctor regarding these issues, and even admitted that her doctor never imposed these restrictions. (Doc. #38-2 at 88). She also failed to show that she is unable to properly and safely perform her work with the current accommodations offered by AK Steel. To the contrary, Williams specifically testified that the current accommodation enables her to perform her work. (*Id.* at 80). Case law makes clear that "an employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). In sum, there is simply no indication that Williams' supervisor transporting her to the yard where she works is not a reasonable accommodation. Therefore, Williams' claim fails, and AK Steel is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that AK Steel's Motion for Summary Judgment **(Doc. #38)** be **GRANTED** and that Williams' claims against AK Steel be **DISMISSED WITH PREJUDICE.**

Dated: February 26, 2019                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager